UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| C. MELCHERS GmbH & Co., <br> MELCHERS TECHIMPORT GmbH <br> AND WELU GERMANY GmbH, <br><br> *Petitioners,* <br><br> v. <br><br> CORBIN ASSOCIATES, LLC d/b/a <br> CORBIN ASSOCIATES and a/k/a, <br> CORBIN ASSOCIATES, INC. and <br> JAMES C. CRUMLEY (an individual) <br><br> *Respondents.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br> No.1:05-cv-349 <br> *Edgar* |

**MEMORANDUM & ORDER**

Petitioners C. Melchers GmbH & Co. ("Melchers"), Melchers Techimport GmbH ("MIG"), and WELU Germany GmbH ("WELU") (collectively "Melchers Companies") bring a motion to confirm an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. [Court Doc. No. 1-1]. Defendants Corbin Associates, LLC, d/b/a Corbin Associates and a/k/a Corbin Associates, Inc. (collectively "Corbin"), and James C. Crumley bring a motion to vacate the arbitration award. [Court Doc. No. 3].

After reviewing the entire record and the arbitration award, this Court finds that the Melchers Companies' motion is well-taken and will be **GRANTED**. Corbin's and Crumley's motion will be **DENIED**.

**I.      Background**

The Melchers Companies is a group of related corporations having their principal place of business in Germany. [Court Doc. No. 1-1]. The Melchers Companies "are in the business of selling, importing, distributing and marketing, on a global basis, a wide variety of hand tools,

tool accessories and related products commonly sold through hardware stores and home improvements centers throughout the world, including the United States." [Court Doc. 4, Ex. 1, Part 4, Answer and Counterclaim]. The Melchers Companies have strong connections with Hong Kong and China that extend back into the 1800s. *Id.*

From 1998 to 2002, Crumley worked for an affiliate of the Melchers Companies based in San Francisco selling and distributing Melchers Companies' products in North America. [Court Doc. No. 4, Ex. 1, Part 4]. In 2002 the Melchers Companies approached Crumley to be the Melchers Companies' exclusive distributor for marketing and selling the Melchers Companies' products in North America, Central America, South America, and the Caribbean. *Id.* On September 27, 2002 the parties entered a "Sole Agency Agreement." *Id.* Under the Sole Agency Agreement, the parties designated Corbin Associates, Inc., a corporate entity formed by Crumley, as the sole agent for marketing, selling, and distributing the Melchers Companies' products in the designated territory. [Court Doc. No. 4, Ex. 1, Part 6].

The parties' relationship began to deteriorate after the signing of the Sole Agency Agreement with each party making claims about the other party's breach of the Sole Agency Agreement and bad faith and misconduct. *See* [Court Doc. No. 4, Ex. 1, Part 4]. On May 26, 2004 an attorney for the Melchers Companies sent a letter to Corbin's attorney terminating the Sole Agency Agreement. *Id.* Among other claims, the Melchers Companies claimed that Crumley refused to pay more than $1 million in outstanding invoices owed to the Melchers Companies. *Id.* Crumley claimed that the Melchers Companies breached the Sole Agency Agreement by failing timely to ship orders for Corbin's customers and failing to inspect goods

for minimum quality standards and soliciting orders from Corbin's customers directly. Crumley also claimed that the Melchers Companies disparaged his reputation.

On June 14, 2004 Crumley and Corbin brought suit against the Melchers Companies in the Chancery Court of Hamilton County, Tennessee, for various claims including breach of the Sole Agency Agreement. *See* [Court Doc. 4, Ex. 1, Part 4]. On June 25, 2004 the Melchers Companies removed the case to this Court and filed an answer and counterclaim against Crumley and Corbin. The counterclaim alleged that Corbin owed them around $1 million in unpaid invoices. *Id.* The counterclaim referenced the parties' alleged consent to a Direct Invoicing Agreement whereby the Melchers Companies would be directly responsible for invoicing two customers who were traditionally late in paying their invoices. *See id.* [Court Doc. No. 4, Ex. 1, Part 5]. The Melchers Companies allege that on October 10, 2003 Crumley sent an email describing and acknowledging the new Direct Invoicing Agreement. [Court Doc. No. 4, Ex. 1, Part 5]. The Melchers Companies alleged in their counterclaim that Corbin began requesting that the two companies subject to the Direct Invoicing Agreement send payments to Corbin directly instead of the Melchers Companies in violation of the Direct Invoicing Agreement. Corbin allegedly informed the customers that it spoke on behalf of the Melchers Companies. [Court Doc. No. 4, Ex. 1, Part 5].

On August 26, 2004, the parties settled all disputes arising out of the Sole Agency Agreement and the state and federal lawsuits. [Court Doc. No. 1-5]. On September 1, 2004 this Court dismissed the case with prejudice based upon an agreed order submitted by the parties indicating that they had settled the lawsuit. [Court Doc. No. 1-6].

-3-

Case 1:05-cv-00349   Document 5   Filed 04/07/06   Page 3 of 20   PageID #: 3

In the recitals of their settlement agreement ("Settlement Agreement"), the parties agree that "disputes have arisen from each party's alleged failure to perform under the Sole Agency Agreement." [Court Doc. No. 1-5]. The parties also agree that Corbin filed a lawsuit in the Chancery Court of Hamilton County and that the Melchers Companies removed the suit to this Court. *Id.* The recitals then state that "the parties wish to settle, compromise and forever resolve all disputes between themselves relating to the various claims, counterclaims and causes of action arising out of or related to the Sole Agency Agreement, the District Court Action and the Circuit Court Action." *Id.*

The Settlement Agreement provided that Corbin would pay MIG $500,000 as a settlement payment on the following schedule: payment of $100,000 due on September 15, 2004; payment of $75,000 due on December 15, 2004; payment of $75,000 due on March 15, 2005; payment of $75,000 due on June 15, 2005; payment of $75,000 due on September 15, 2005; payment of $100,000 due December 15, 2005. [Court Doc. No. 1-5]. The Settlement Agreement further provided that in the event of a failure to make a scheduled payment, Crumley would become personally liable for a specified percentage of the unpaid payment due depending on when the default occurred. *Id.* The Settlement Agreement further discussed nonsolicitation of each party's customers for a limited time and required Corbin to cease identifying itself as associated with the Melchers Companies.

The Settlement Agreement also contained comprehensive releases relating to both parties. The release pertaining to Corbin states:

> The Corbin Group hereby releases, acquits, and forever discharges Melchers Techimport GmbH, WELU Germany GmbH and C. Melchers GmbH & Co. and their respective affiliates, officers, directors, shareholders, members, employees, agents, representatives, attorneys, predecessors, successors, assigns, any surviving

-4-

> companies or entities by reason of any merger or acquisition, and all persons acting by, through, under or in concert with any of them from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, damages, demands, losses, costs and expenses (including attorneys' fees) of any kind, character or nature whatsoever, direct, indirect or by way of contribution and indemnity, fixed or contingent, whether known or unknown, that the Corbin Group may have or claim to have, now or in the future, arising out of or related to the Sole Agency Agreement, the Circuit Court Action and the District Court Action.

[Court Doc. No. 1-5]. The release pertaining to the Melchers Companies contains similar language. *Id.*

The Settlement Agreement also provided that "all matters pertaining to the validity, construction, interpretation and effect of this Agreement shall be governed by the laws of the State of Tennessee." [Court Doc. No. 1-5]. However, with respect to disputes, the Settlement Agreement provided that "[a]ny dispute arising out of, related to, or in connection with this Settlement Agreement and Release shall be submitted to and resolved by arbitration before a single arbitrator of the American Arbitration Association. The Commercial Arbitration Rules of the American Arbitration Association shall apply to and govern any such arbitration." *Id.*

Although Corbin made its first payment to MIG of $100,000, it failed to make the second payment due on December 15, 2004. The Melchers Companies then filed a Demand for Arbitration due to Corbin's breach of the agreed payment schedule in the Settlement Agreement. The parties agreed on an experienced arbitrator to arbitrate their claims pursuant to the terms of the Settlement Agreement.

At arbitration Corbin and Crumley argued that the Settlement Agreement was invalid because it alleged the Melchers Companies fraudulently induced Corbin's and Crumley's agreement to the terms of the Settlement Agreement by concealing relevant and material facts from Corbin and Crumley. Corbin and Crumley essentially claimed that although Corbin had

-5-

cancelled the Direct Invoicing Agreement, the Melchers Companies continued directly invoicing some of Corbin's customers, thereby receiving money from those customers that was actually due to Corbin. Corbin asserts that it did not know of these continued direct payments to the Melchers Companies and contended that the amount of payments affected the amount Corbin actually owed to the Melchers Companies.

On March 15, 2005 the Melchers Companies filed a motion for summary disposition before the arbitrator arguing that Corbin's and Crumley's claims pertained to the Direct Invoicing Agreement and were therefore released by the terms of the Settlement Agreement. [Court Doc. No. 4, Ex. 2]. The Melchers Companies also argued that res judicata and collateral estoppel barred Corbin's and Crumley's claims based on this Court's order dismissing the district court action. *Id.*

Corbin and Crumley responded to the motion for summary disposition arguing that the matter was not an appropriate one for summary disposition and that Corbin needed to conduct discovery pertinent to its claims of fraud. [Court Doc. No. 4, Ex. 3]. The arbitrator then held a preliminary hearing and both parties submitted additional briefing on the motion for summary disposition. [Court Doc. Nos. 4, Ex. 4; 3, Ex. A]. Crumley also filed an affidavit with Corbin's briefing. [Court Doc. No. 3, Ex. A]. Corbin and Crumley again argued that summary disposition was not an appropriate means of deciding the case in arbitration and that Corbin needed discovery relevant to its claims that the Melchers Companies had received payments that Corbin was owed.

On May 23, 2005 the arbitrator held a telephonic preliminary hearing on the motion for summary disposition in which he asked Corbin and Crumley for a detailed description of their

allegations of fraud. [Court Doc. 4, Ex. 5]. Corbin and Crumley then filed a Statement of Fraudulent Claims with the arbitrator and attached several exhibits in support of their claims. [Court Doc. 3, Ex. C]. Corbin and Crumley described the fraudulent claims as being "premised on Corbin's accounts receivable . . . and the amounts Melchers claimed was owed by Corbin prior to the settlement." *Id.* Corbin and Crumley argued that the Melchers Companies' alleged fraud was their failure to disclose during settlement negotiations the amount of money they had previously collected from Corbin's customers. *Id.* Corbin and Crumley allege that "Melchers had previously collected Corbin's money and did not inform Corbin of these collections." *Id.*

The arbitrator held an in-person hearing on June 7, 2005 to hear the parties' arguments on the motion for summary disposition. [Court Doc. 4, Ex. 8]. During the hearing the arbitrator indicated that he would allow Corbin and Crumley to provide him with additional legal research regarding a duty to disclose information during settlement negotiations pursuant to litigation. *Id.* Following the hearing, Corbin and Crumley filed an additional legal brief regarding the Melchers Companies' duty to disclose. [Court Doc. 4, Ex. 9].

The arbitrator issued his first order on June 11, 2005 and found that Corbin's and Crumley's fraud claim was based on issues pertaining to the Direct Invoicing Agreement and that these claims were released by the Settlement Agreement. [Court Doc. No. 1, Ex. 7]. The arbitrator dismissed Corbin's and Crumley's fraudulent inducement claims, as well as their other intentional tort claims. *Id.*

In his first order the arbitrator indicated that the parties should be allowed to conduct discovery and attend a hearing on the merits regarding "the original claims of Melchers of the breach of the Settlement Agreement, the proper interpretation of the Settlement Agreement

-7-

Case 1:05-cv-00349   Document 5   Filed 04/07/06   Page 7 of 20   PageID #: 7

concerning third party indebtedness between them and the amount of set-off, if any, available to Corbin and Crumley, this as a result of an ultimate interpretation of the Settlement Agreement concerning entitlement to third party collections that may be at issue." [Court Doc. No. 1, Ex. 7].

The parties then briefed the issues of contract interpretation. [Court Doc. Nos. 4, Exs. 12, 13]. The arbitrator issued an order on September 7, 2005 and a modified order on September 15, 2005 regarding the legal issue of "set-offs" under the Settlement Agreement. [Court Doc. No. 1, Ex. 8]. In the second order the arbitrator determined that the Melchers Companies had no liability for any set-off under Tennessee's law of contracts due to the language of the release in the Settlement Agreement. *Id.*

The parties attended a final hearing on October 17, 2005, and the arbitrator issued a final award on November 10, 2005 and modified the award on December 13, 2005 to correct a clerical error. [Court Doc. No. 1, Ex. 5]. The arbitrator ordered Corbin and Crumley to pay the Melchers Companies amounts due to and owing under the Settlement Agreement with a "set-off" for approximately $30,000 and with additional payments for attorneys' fees and costs. *Id.* The arbitrator determined that Corbin owed the Melcher Companies a total of $496,294.01, which included attorneys' fees and costs, with a per diem interest rate of $81.23 after October 17, 2005. He determined that Crumley, "as a fifty percent (50%) guarantor of Corbin's obligation," owed the Melchers Companies $294,246.67, also including attorneys' fees and costs, and a per diem interest rate of $40.62 after October 17, 2005.

Corbin and Crumley then filed a motion to vacate the award in this Court. [Court Doc. No. 3]. The Melchers Companies filed a motion to confirm the arbitration award in its entirety. [Court Doc. No. 1].

## II. Jurisdiction and Venue

Section 9 of the FAA provides for venue in this Court to confirm an award of arbitration issued within the district of this Court. 9 U.S.C. § 9. The provision states in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected . . . If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

*Id.* The parties do not dispute that the arbitration award was issued in the district of this Court. Therefore, venue is proper.

Further, a basis for this Court's jurisdiction exists in 28 U.S.C. § 1332(a)(2) because of complete diversity of citizenship of the parties and an amount in controversy of over $75,000. *See New Hope Baptist Church v. Design Bldg. Interiors, Inc.*, 789 F.Supp. 19, 20 (D.D.C. 1992). The Melchers Companies are all citizens of Germany and Corbin and Crumley are Tennessee citizens. Neither party disputes this Court's jurisdiction in this matter.

## III. Analysis

### A. Choice of Applicable Arbitration Rules

Corbin and Crumley argue that the arbitrator's award should be vacated because the arbitrator did not have authority under the applicable rules of arbitration to decide the substantive issues on a motion for summary disposition. They argue that the Tennessee Uniform

-9-

Case 1:05-cv-00349   Document 5   Filed 04/07/06   Page 9 of 20   PageID #: 9

Arbitration Act, Tenn. Code Ann. § 29-5-301 et seq., applies because the parties agreed that Tennessee law would govern the terms of the Settlement Agreement. They further argue that the Tennessee Uniform Arbitration Act contains no provision for ruling on a motion for summary disposition and therefore, the arbitrator erred by refusing to have a hearing and allow the parties to present evidence and cross-examine witnesses. The Melchers Companies argue that the *Commercial Arbitration Rules* should apply because the parties specifically agreed that such rules would apply to any arbitration regarding the interpretation of the Settlement Agreement.

In *Jacada (Europe), Ltd. v. International Marketing Strategies, Inc.*, the Sixth Circuit addressed a similar question to the question presented here. 401 F.3d 701 (6th Cir. 2005). In *Jacada*, as in the instant action, the parties agreed to arbitrate and also agreed to a general choice-of-law provision. *Id.* at 710. The Court addressed whether the FAA standard for vacating an arbitration award should apply or whether Michigan's standard should apply. *Id.* The Court determined that "[w]e do not believe that the parties intended to displace the federal standard for vacatur when the only evidence of such intent is a generic choice-of-law provision." *Id.* at 712. It held that the federal standard for vacatur under the FAA should apply. *Id.* Because the parties indicated the *Commercial Arbitration Rules* would apply to an arbitration over the Settlement Agreement, the Court finds that the specific provision regarding arbitration trumps the generic choice-of-law clause.

### B. This Court's Authority to Vacate the Arbitration Award

Section 10 of the FAA provides reasons for which a district court may vacate an arbitration award. 9 U.S.C. § 10(a). Corbin and Crumley claim that the arbitrator violated Section 10(a)(3) in this case and that his decision should therefore be vacated. Section 10(a)(3)

-10-

Case 1:05-cv-00349   Document 5   Filed 04/07/06   Page 10 of 20   PageID #: 10

provides that a district court may vacate an arbitration award: "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).

The Sixth Circuit and other federal courts have also determined that an arbitration award may be overturned "if it displays 'manifest disregard of the law.'" *Jacada*, 401 F.3d at 712 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). However, a federal court's review of an arbitration award is "strikingly deferential." *Jacada*, 401 F.3d at 712. (citing *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003)).  The arbitration award must be upheld if the "arbitrator was 'even arguably construing or applying the contract.'" *Jacada*, 401 F.3d at 712 (quoting *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).  To be reversed, "the award 'must fly in the face of clearly established legal precedent.'" *Jacada*, 401 F.3d at 713 (quoting *Merrill Lynch*, 70 F.3d at 421).  Under Sixth Circuit precedent, an arbitrator acts in manifest disregard of the law if "'(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.'" *Jacada*, 401 F.3d at 713 (quoting *Nationwide Mut. Ins. Co.*, 330 F.3d at 847).

In discussing the deference owed to an arbitrator's decision, the Sixth Circuit has noted that the "review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers of America, AFL-CIO, District 27*, 913 F.2d 1166, 1169 (6th Cir. 1990).  The U.S. Supreme Court has also described the great deference to be paid to an arbitrator's decision:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, the court should not reject an award on the ground that the arbitrator misread the contract. . . . The arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Lattimer-Stevens Co.*, 913 F.2d at 1169 (quoting *Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 370-71).

Corbin and Crumley argue that the arbitrator's award should be vacated under 9 U.S.C. § 10(a)(3) for misconduct because the arbitrator ruled on a motion for summary disposition without any authority to do so and because he also made rulings that were in manifest disregard of the law.

### C. Authority for Ruling on Motion for Summary Disposition

Although the *Commercial Arbitration Rules* do not provide specifically for a motion for summary disposition, the arbitrator cited Rules 30, 31, and 34 as providing support for his decision to determine the parties' dispute based on the Melchers Companies' motion for summary disposition. Rule 30 states:

> (a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.
> (b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.
> (c) The parties may agree to waive oral hearings in any case.

Rule 30, *Commercial Arbitration Rules*. Rule 34 provides that "[t]he arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." Rule 34, *Commercial Arbitration Rules*. Rule 31 provides that "(a) [t]he parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. . . . (b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant." Rule 31, *Commercial Arbitration Rules*.

Although the *Commercial Arbitration Rules* do not specifically provide for motions for summary disposition, federal courts have affirmed arbitration awards where the arbitrator ruled on a motion for summary disposition or summary judgment. As one federal court has noted, misconduct under 9 U.S.C. § 10 will not be "found unless the aggrieved party was denied a 'fundamentally fair hearing.'" *Intercarbon Bermuda, Ltd. v. Caltex Trading and Transport Corp.*, 146 F.R.D. 64, 72 (S.D.N.Y. 1993). In that case the court noted that it was:

> mindful of the factors weighing against the arbitrator's decision to render judgment on the documentary evidence alone: the importance of hearings to most arbitration proceedings; the weakness of affidavits as bases for summary determinations; and the repeated desire of [the plaintiff] to present live testimony. Despite these considerations, the arbitrator's decision is reasonable and does not amount to misconduct. Hearings will not be required just to see whether real issues surface. . . . The arbitrator's conclusion that no live hearings were necessary to resolve the contract issue in this case was not fundamentally unfair to [the plaintiff], and will not be disturbed by this Court.

*Id.* at 74. *See also, Hamilton v. Sirius Satellite Radio, Inc.*, 375 F.Supp.2d 269, 278 (S.D.N.Y. 2005) (confirming arbitration award based on grant of summary judgment)).

Corbin and Crumley complain that the arbitrator issued an order on the Melchers Companies' motion for summary disposition without allowing them to conduct discovery or without giving them a hearing with an opportunity to present witnesses and cross-examine the Melchers Companies' witnesses. However, the U.S. Supreme Court has upheld the arbitration process even though arbitration may not afford participants as many procedural safeguards as the federal court system does. The Supreme Court has noted that although arbitration "procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 1655 (1991)(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

In *Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, the Sixth Circuit faced similar arguments to the ones Corbin and Crumley make here. 205 F.3d 1340, 2000 WL 178554 *5 (6th Cir. 2000). In that case the appellant argued that the arbitrator committed misconduct by determining the issues based on a motion for summary judgment without conducting an evidentiary hearing or permitting discovery. *Id.* The appellant also claimed an "absolute right to present evidence and confront witnesses." *Id.* The Sixth Circuit disagreed. It noted that "it is the arbitrators who are the judges of the relevance and materiality of the evidence offered." *Id.* It also noted that "[a]rbitration may proceed summarily and with restricted inquiry into factual issues." *Id.* (citing *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992)). Further, the Sixth Circuit explained:

> 'Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to

arbitration has been denied a fundamentally fair hearing.' . . . Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators.

*Id.* at *6 (quoting *National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985)); *see also Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002). The Court determined that the appellant had had an opportunity to present its claims, argue why discovery should be allowed, and provide supplemental briefing and documents to the arbitrators before they issued a decision. *Id.* The Court affirmed the district court's determinations that the arbitrator's decision did not result from misconduct and that he allowed a fundamentally fair hearing.

Similarly, in this case Corbin and Crumley had numerous opportunities to argue, present evidence, and brief their contentions. Corbin and Crumley filed a letter in response to the Melchers Companies' motion for summary disposition and then filed briefing on the subject at the arbitrator's request. The parties then attended a telephonic preliminary hearing and argued their positions. The arbitrator invited Corbin and Crumley to detail their claims of fraud, and they subsequently filed a Statement of Fraud describing their allegations. The parties attended an in-person hearing on the motion for summary disposition, and the arbitrator invited Corbin and Crumley to brief the issue of whether a duty to disclose information during settlement negotiations exists under relevant legal authority. Corbin and Crumley then filed additional briefing on that topic. Only after all of these opportunities to present their claims, did the arbitrator issue his first order denying Corbin's and Crumley's fraudulent inducement claims.

Although the *Commercial Arbitration Rules* do not specifically provide for a motion for summary disposition, the rules do provide the arbitrator with discretion and flexibility. Rules 30,

-15-

31, 34, *Commercial Rules of Arbitration*. Further, several courts have confirmed arbitration awards based on summary judgment or summary disposition motions. *See Peabody Coal Co.*, 205 F.3d 1340. Therefore, this Court finds that the arbitrator did not deny Corbin and Crumley a fundamentally fair hearing, and therefore did not engage in misconduct under 9 U.S.C. § 10(a)(3).

        **D.**      **Manifest Disregard of the Law**

Corbin and Crumley also argue that this Court should vacate the arbitrator's decision because he manifestly disregarded the law. They cite the cases of *E.I. DuPont Nemours and Co. v. Florida Evergreen Foliage* and *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.* for support of their contention that a claim of fraudulent inducement is not covered by a general release. 744 A.2d 457 (Del. Sup. Ct. 2000); 223 F.3d 1275 (11th Cir. 2000). The courts in those cases determined that the plaintiffs' fraudulent inducement claims were not barred by the releases found in the parties' settlement agreements. However, this Court finds these cases to be distinguishable from the situation present in the instant action.

In the *Florida Evergreen Foliage* case the parties entered into a settlement agreement that related to the plaintiff's claims that the defendant sold it a defective fungicide, Benlate, that caused damage to the plaintiff's plants and nursery. 744 A.2d at 458. The settlement agreement specifically provided in the preamble that the agreement related solely to plaintiff's claims arising from the use of Benlate. *Id.* The plaintiff claimed that defendants fraudulently induced it into the settlement agreement by withholding relevant scientific data from discovery that it was under an obligation to produce. It further alleged that the defendant gave false testimony in

-16-

other suits relating to Benlate. *Id.* at 459. In that case, the defendant affirmatively violated the rules of discovery. *Id.* at 461.

The *Mazzoni Farms* case involved the same defendant and the same defective fungicide, Benlate. As in the *Florida Evergreen Foliage* case, the plaintiffs alleged affirmative misrepresentation by the defendant's destruction of relevant evidence. 223 F.3d at 1278. The parties also released only claims relating to the use of the defendant's specific products. *Id.* at 1284.

In contrast, in the instant action, the parties agreed to release all claims, whether known or unknown, relating to the Sole Agency Agreement, the Circuit Court action, or the District Court action. [Court Doc. No. 1-5]. The District Court action clearly covered the Melchers Companies' contentions regarding the Direct Invoicing Agreement because the Melchers Companies devoted substantial space in their answer and counterclaim filed in this Court discussing the Direct Invoicing Agreement. As the arbitrator found, Corbin's and Crumley's allegations of fraudulent concealment regarding payments due to them that were paid directly to the Melchers Companies appear to relate specifically to the parties' dispute over the terms of the Direct Invoicing Agreement and its alleged cancellation by Corbin. This dispute was released by the terms of the Settlement Agreement. Further, the behavior by the defendant DuPont in the *Evergreen Foliage* case and the *Mazzoni Farms* case involved active concealment of relevant, material information during discovery. In other words, DuPont violated the rules of discovery. No such violation of discovery rules is alleged here. As the Melchers Companies point out, the parties agreed to settle before they had spent extensive time and effort on discovery. Therefore, both parties were at an information disadvantage, but that is part of the bargain that they struck.

They elected to forego expensive and time-consuming discovery to reach a settlement more quickly. Nothing prevented Corbin and Crumley from releasing their claims after they had performed more investigation of material facts through discovery. Thus, this Court concludes that the arbitrator did not manifestly err in determining that the parties' Settlement Agreement barred Corbin's and Crumley's fraudulent inducement claim.

The arbitrator requested Corbin and Crumley to direct him to Tennessee law or other authorities indicating that a party has a duty to disclose negative facts during settlement negotiations where there is no discovery pending or produced. The arbitrator found that Corbin and Crumley failed to point to such legal authority. The arbitrator gave Corbin and Crumley numerous opportunities to argue their position; they merely failed to do so convincingly.

The parties selected Tennessee law as their choice of law under the Settlement Agreement. Under Tennessee law one of the essential elements of fraud is an intentional misrepresentation of a material fact. *See e.g. Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1993). The party charged with fraud must also have a duty to disclose the knowledge of an existing fact. *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1987). "A party to a contract has a duty to disclose to the other party any material fact affecting the essence of the subject matter of the contract, unless ordinary diligence would have revealed the undisclosed fact." *Id.* In the instant action no allegation exists that the Melchers Companies made an affirmative misrepresentation to Corbin or Crumley. Moreover, under Tennessee law the Melchers Companies had no duty to disclose any negative facts where Corbin and Crumley could have used ordinary diligence through the use of discovery or other private investigative

means to determine what third party payments had been made to the Melchers Companies. *See id.*

The parties in this case entered a general, broad release of all claims, known or unknown, relating to the Sole Agency Agreement, the Circuit Court action, or the District Court action. Under Tennessee law "[a] general release covers all claims between the parties which are in existence and within their contemplation." *Miller v. Stone*, 2005 WL 711981 *5 (Tenn. Ct. App. 2005) (quoting *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. Sup. Ct. 1974)). The arbitrator merely held the parties to the bargain that they struck, and this Court determines that he did not commit a manifest error of law in doing so. *See Jacada*, 401 F.3d at 713.

**ORDER**

Because this Court finds no misconduct on the part of the arbitrator under 9 U.S.C. § 10(a)(3) and no manifest error of law, Corbin's and Crumley's motion to vacate is **DENIED**. Because the parties do not dispute the arbitrator's accounting figures in the Modified Final Award dated December 13, 2005, the Modified Final Award is **CONFIRMED**.

Pursuant to the terms of the Settlement Agreement, this Court will award the Melchers Companies reasonable attorneys' fees, costs, and expenses associated with its filing the motion to confirm the arbitration award. If the parties agree to a reasonable amount of fees, costs, and expenses, then on or before April 28, 2006 the parties shall submit a proposed agreed order for such amount, and this Court will enter judgment accordingly. If the parties are not able to reach an agreement on the amount of attorneys' fees, costs and other expenses, then the Melchers Companies shall file its motion for attorneys' fees, costs, and expenses by May 5, 2006. Corbin and Crumley shall file their response to such motion by May 15, 2006. After this Court has

made a final determination on an appropriate amount of attorneys' fees, costs, and expenses, this Court will enter a final judgment in this action.

SO ORDERED.

ENTER this *6th day of April, 2006.*

                                           */s/ R. Allan Edgar*
                                            R. ALLAN EDGAR
                                     UNITED STATES DISTRICT JUDGE